```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON
```

SIERRA CLUB and WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,

      Plaintiffs,

v.                                         Civil Action No. 2:10-1199

FOLA COAL COMPANY, LLC,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is the parties' joint motion to enter the November 30, 2011, proposed consent decree, filed January 25, 2012.

I.

Fola Coal Company, LLC ("Fola") owns and operates Surface Mine No. 3 in Clay and Nicholas Counties, West Virginia. (Ans. at ¶ 10). Prior to the start of mining operations, Fola applied for and received two environmental regulatory permits central to the underlying claims in this case: 1) West Virginia Surface Mining Permit S200995 ("permit S200995") and 2) West Virginia National Pollutant Discharge Elimination System ("WV/NPDES") permit WV1014005 ("permit WV1014005").

As part of its operations in the area, Fola built a valley fill and sediment control pond in the Boardtree Branch watershed, a tributary of Twentymile Creek. (Id. at ¶ 33). Fola's permit WV1014005 allows discharge at a certain outlet at which point water discharges into Boardtree Branch. (Id. at ¶ 35). Fola continues to operate Surface Mine No. 3, and the above permits remain active.

Plaintiffs are two environmental organizations: the West Virginia Highlands Conservancy ("WVHC") and the Sierra Club. One of them, WVHC, has a strong presence in West Virginia and undertakes to work for the conservation and prudent management of the state's natural resources. WVHC is a non-profit organization incorporated in West Virginia and is comprised of approximately 2,000 members. (Compl. at ¶ 11). The Sierra Club is a non-profit organization based in California, with more than 1.3 million members and supporters nationwide. Approximately 1,900 of these members reside in West Virginia and belong to the West Virginia Chapter. (Id. at ¶ 12). Among the Sierra Club's concerns are the exploration, enjoyment, and protection of surface waters in West Virginia. (Id.).

On October 11, 2010, plaintiffs instituted this action pursuant to the provisions for "citizen suits" found in section 505(a) (33 U.S.C. § 1365(a)) of the Federal Water Pollution

Control Act, commonly referred to as the Clean Water Act. The complaint sets forth two counts against Fola. Count I asserts violations of the Clean Water Act, 33 U.S.C. § 1251 et seq. (Comp. at ¶¶ 45-52). Count II asserts violations of the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 et seq. (Id. at ¶¶ 53-60). Plaintiffs allege that, by discharging pollutants from the mine's outfall 29, which cause acute and chronic toxicity, ionic stress, and biological impairment in Boardtree Branch, Fola has violated the narrative water quality standards for biological integrity and aquatic life protection incorporated into its WV/NPDES Permit WV1014005 under the Clean Water Act, and the performance standards requiring compliance with water quality standards and protection of the hydrologic balance in its WVSCMRA Permit S200995.

On November 30, 2011, the parties lodged a proposed consent decree pursuant to section 505(c) of the Clean Water Act. That section provides pertinently that

> [n]o consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator.

33 U.S.C. § 1365(c)(3). Consistent with the foregoing provision, the parties sent a copy of the proposed consent decree to the United States Department of Justice, which was

3

received there by a Citizen Suit Coordinator on November 30, 2011.

On January 23, 2012, the court received from Matthew Z. Leopold, a lawyer with the Law and Policy Section for the Environment and Natural Resources Division of the Department of Justice, a notice reflecting that the United States did not object to entry of the proposed consent decree. On January 25, 2012, the parties jointly moved for entry of the proposed consent decree.

## II.

Our court of appeals has observed that "a consent decree 'has elements of both judgment and contract,' and is subject to 'judicial approval and oversight' generally not present in other private settlements." Szaller v. Am. Nat'l Red Cross, 293 F.3d 148, 152 (4th Cir. 2002) (quoting Smyth v. Rivero, 282 F.3d 268, 279-80 (4th Cir. 2002)); see also Local No. 93, Int'l Assn. of Firefighters, AFL-CIO v. Cleveland, 478 U.S. 501, 519 (1986); United States v. ITT Cont'l Baking Co., 420 U.S. 223, 237 n. 10 (1975) (citation omitted); Alexander v. Britt, 89 F.3d 194, 199 (4th Cir. 1996).

It has expanded upon this principle in Smyth,

observing that a court is expected, when presented with a proposed consent decree, to scrutinize the accord and make certain findings prior to entry:

> Because it is entered as an order of the court, the terms of a consent decree must also be examined by the court. As Judge Rubin noted in United States v. Miami,
>
>> Because the consent decree does not merely validate a compromise but, by virtue of its injunctive provisions, reaches into the future and has continuing effect, its terms require more careful scrutiny. Even when it affects only the parties, the court should . . . examine it carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence.
>
> 664 F.2d at 441 (Rubin, J., concurring). In other words, a court entering a consent decree must examine its terms to ensure they are fair and not unlawful.

Smyth, 282 F.3d at 280.

The standards governing consideration of a proposed consent decree are elucidated further by United States v. North Carolina, 180 F.3d 574, 581 (4th Cir. 1999):

> In considering whether to enter a proposed consent decree, a district court should [1] be guided by the general principle that settlements are encouraged. Nevertheless, a district court should not blindly accept the terms of a proposed settlement. See Flinn v. FMC Corp., 528 F.2d 1169, 1173 (4th Cir. 1975). Rather, before entering a consent decree the court must satisfy itself that [2] the agreement "is fair, adequate, and reasonable" and [3] "is not illegal, a product of collusion, or against the public interest." United States v. Colorado, 937 F.2d 505, 509 (10th

> Cir. 1991). In considering the fairness and adequacy of a proposed settlement, the court <u>must assess the strength of the plaintiff's case</u>. See <u>Flinn</u>, 528 F.2d at 1172-73. While this assessment does not require the court to conduct "a trial or a rehearsal of the trial," <u>the court must take the necessary steps to ensure that it is able to reach "an informed, just and reasoned decision."</u> <u>Id.</u> (internal quotation marks omitted). In particular, the "court should consider <u>the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement.</u>" <u>Carson v. Am. Brands, Inc.</u>, 606 F.2d 420, 430 (4th Cir. 1979) (en banc) (Winter, J., dissenting), adopted by <u>Carson v. Am. Brands, Inc.</u>, 654 F.2d 300, 301 (4th Cir. 1981) (en banc)(per curiam).

<u>Id.</u> at 581 (emphasis supplied).

### III.

As noted in <u>North Carolina</u>, the court accepts the general proposition that settlements are encouraged. The consideration is especially <u>apropos</u> in this action, which appeared poised to consume a significant amount of time and expense by the parties along with a substantial redirection of judicial resources.

The next consideration concerns the fairness, adequacy, and reasonableness of the accord. The consent decree first requires defendant to deliver to the United States within 30 days a civil penalty in the amount of $25,000. (Proposed Consent Decree at 3-4). The consent decree also provides for a

6

payment of $200,000 to the West Virginia Land Trust in order to fund a Supplemental Environmental Project ("SEP").  (Id. at 4).  Even so, it further provides that if the special master makes a negative determination with respect to defendant's compliance with the narrative water quality standards pursuant to paragraph 37 of the decree, defendant shall pay an additional $500,000 to the West Virginia Land Trust in order to fund the SEP.  (Id. at 4, 9).  The proposed SEP would enable the West Virginia Land Trust, working in partnership with the West Virginia University College of Law's Land Use and Sustainable Development Clinic, to develop a Riparian Area Preservation Project to help identify ecologically significant properties in the watersheds affected by the discharge at issue in this litigation.  (Id. at Appendix A).

Defendants have agreed to submit, at a minimum, quarterly progress reports to counsel for plaintiffs detailing its discharge from Outlet 29 with respect to the specific parameters set forth in the decree.  (Id. at 6-7).  Finally, the consent decree provides that defendants shall pay reasonable costs and attorneys' fees incurred by plaintiff in connection with this civil action.  (Id. at 12-14).  The parties agree that those costs and fees amount to $118,674.90.  (Id. at 13).

It is noteworthy that the parties did not reach agreement immediately.  Rather, an amicable resolution was achieved only after discovery and extensive litigation concerning plaintiffs' dispositive motion.  That is, several months after initiating the action, plaintiffs moved for partial summary judgment on standing, liability, and injunctive relief.  The motion was fully briefed and the underlying issues of law and fact were illuminated and contested with vigor.  Accordingly, the court is satisfied that both sides were aggressively litigating the case up to the point they sought to suspend the scheduling order pending further settlement discussions.

The timing of the proposed consent decree presents no difficulty.  Plaintiffs appear to have achieved the precise relief sought in the complaint.  That relief redounds in a substantial way to the general public, which is borne out by an examination of the proposed consent decree's terms.  The accord sets forth a reasoned timetable for ensuring the restoration of the Boardtree Branch of Twentymile Creek.

### IV.

Based upon the foregoing, the court finds that the proposed consent decree is, with the limitation on Retention of

Jurisdiction set forth below, fair, adequate, and reasonable. The court further finds that the accord is neither illegal nor the product of collusion and that it serves the public interest. In view of these findings, and inasmuch as no person has opposed entry of the consent decree, the court ORDERS as follows:

1. The Retention of Jurisdiction described in Section XIV at Paragraph 61 is, for any and all purposes, limited to a period of five years from this date, except that jurisdiction is retained beyond that five-year period for the purpose of resolving court proceedings pending five years from this date to interpret, modify or enforce this consent decree, and except further that, on motion of either plaintiffs or defendant, the court may extend the five year period for up to an additional six months based on compelling need and good cause shown;

2. The proposed consent decree, with the limitation on Retention of Jurisdiction set forth in paragraph number 1 last above be, and it hereby is, entered with the court's approval this same date; and

3. This action be, and it hereby is, dismissed and stricken from the docket, with the court retaining jurisdiction as set forth above.

The Clerk is requested to transmit this written opinion and order to all counsel of record and to any unrepresented parties.

      DATED: February 9, 2012

      John T. Copenhaver, Jr.
      United States District Judge